UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CYNTHIA SILVA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO., et al.,<br><br>    Defendants. | Case No. 4:14-cv-05673-JSW (LB)<br><br>**ORDER REGARDING DISCOVERY DISPUTE AT ECF NO. 91** |

### INTRODUCTION

The plaintiffs, who are the parents of a woman who died after a train struck her at a railroad crossing, seek documents surrounding a federally funded safety improvement project for the crossing; the City of San Leandro and Union Pacific assert that the documents are privileged under 23 U.S.C. § 409. (Letter Brief, ECF No. 91.[1]) The City submitted its documents to the court for an *in camera* review on October 16, 2015. The court held a hearing on October 29, 2015; there the parties agreed that the court would review the documents *ex parte* and on the record with the producing parties and that the plaintiffs' counsel would attend the hearing to address legal issues. (10/29/15 Order, ECF No. 108, at 2.) On November 5, 2015, the court held a hearing, followed that process, and ordered the production reflected on the attached privilege log for the reasons

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated numbers at the tops of the documents.

ORDER (No. 4:14-cv-05673-JSW (LB))

stated on the record and in this order.

## STATEMENT

On May 19, 2014, Brittney Silva was struck and killed while walking southbound on Hesperian Boulevard at the railroad crossing at Hesperian Boulevard and Springlake Drive in San Leandro, CA. (Complaint, ECF No. 67 at 2.) Amtrak owned and operated the train on tracks owned by Union Pacific Railroad Company. (Letter Brief, ECF No. 91 at 1.)

The plaintiffs Cynthia and Eric Silva are the surviving parents and sole heirs of Ms. Silva, and they sue the four defendants for negligently causing their daughter's death: 1) the City of San Leandro (the "City"), 2) Union Pacific, 3) Amtrak, and 4) Amtrak engineer Michael Jenecke. (*See* ECF No. 67.) They seek discovery from the City and Union Pacific relating to a federally funded safety improvement project (the "Project") at the Hesperian crossing that was initiated before the accident and completed afterward. (Letter Brief, ECF No. 91 at 1.) The documents include a 2012 Traffic Study conducted by the City of San Leandro, the California Public Utilities Commission, and Union Pacific Railroad. (*Id.* at 5.) They then want to depose City engineers. (*Id.* at 1.) The City and Union Pacific contend that the documents are privileged under 28 U.S.C. § 409. (*Id.* at 6.)

## GOVERNING LAW

23 U.S.C. § 409 provides:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 [previously 152] of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

28 U.S.C. § 130 is the relevant statute here: it provides for federal funding for projects for the elimination of hazards of railway-highway crossings.

By its plain language, section 409's privilege applies to only five discrete types of information: ***reports, surveys***, ***schedules, lists*** and ***data***. Courts have found that these types of information may, depending on the circumstances, take the form of letters and other correspondence. *See Madden v.*

ORDER (No. 4:14-cv-05673-JSW (LB))

2

*Antonov*, No. 4:12CV3090, 2014 WL 4295288, at *7 (D. Neb. Aug. 31, 2014) (collecting cases); *Rasmusen v. White*, No. 10 C 6171, 2011 WL 5179894, at *3 (N.D. Ill. Oct. 31, 2011) ("[T]he majority of cases to consider the issue have found that correspondence between the parties to a proposed rail crossing improvement is privileged."). Courts also have determined that, while section 409 clearly encompasses information compiled or collected to "identify[ ], evaluat[e], or plan[ ]" a project, *see* 23 U.S.C. § 409, it does not encompass information compiled or collected to implement that project. *See Powers v. CSX Transp., Inc.*, 177 F. Supp. 2d 1276, 1279-80 (S.D. Ala. 2001) (collecting cases).

Because it establishes an evidentiary privilege, section 409 must be construed narrowly. *Pierce Cnty., Wa. v. Guillen*, 537 U.S. 129, 144-45 (2003). As the Supreme Court has held, the statute "protects only information compiled or collected for § 152 purposes, and does not protect information compiled or collected for purposes unrelated to § 152, as held by the agencies that compiled or collected that information." *Id.* at 146; *see id.* at 144 (adopting the government's view that "§ 409 protects all reports, surveys, schedules, lists, or data actually compiled or collected for § 152 purposes, but does not protect information that was originally compiled or collected for purposes unrelated to § 152 and that is currently held by the agencies that compiled or collected it, even if the information was at some point 'collected' by another agency for § 152 purposes").

"It is well settled that a plaintiff may not circumvent Section 409 by asking a witness to testify to matters the witness learned from documents protected by Section 409." *Powers v. CSX Transp., Inc.*, 177 F. Supp. 2d 1276, 1279-80 (S.D. Ala. 2001) (collecting cases). "On the other hand, knowledge gained by the witness independently of material protected by Section 409 is not protected." *Id.* at 1280 (citing cases).

The party invoking section 409 has the burden to show that it applies. *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 181, 184 (3d Cir. 2013); *see Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) ("The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question.").

## ANALYSIS

**1. Documents**

A preliminary point is that the City did not resist production of photographs and accident reports, essentially because they are underlying facts or otherwise are not reports compiled for the purpose of identifying, evaluating, or planning the safety enhancement of the railway crossing pursuant to section 130. The court previously ordered (with the City's assent) the production of the photographs, and the City verified at the hearing that it had produced all accident reports associated with the railway crossing.

A second preliminary issue is that the parties agree that there is a line between identifying, evaluating, and planning on the one hand and implementation on the other. *See Powers*, 177 F. Supp. 2d at 1279-80. The point of the privilege is akin to an investigative one (a point that the plaintiffs did not dispute). The privilege promotes honesty in evaluating hazards and planning to eliminate them (through federal funding), and covered entities (here, the City and the railroad) are protected from having their own investigation and planning used against them in civil litigation (either through discovery or in the case itself). *See Pierce County*, 537 U.S. at 146. Once the project enters the implementation stage, however, the parties agree that reports, surveys, schedules, lists, or data (the only things covered by the statute) are not protected by the statute. *See Powers*, 177 F. Supp. 2d at 1279-80.

The main issue is the effect of funding and whether it acts as a bright line between identifying, evaluating, and planning (in aid of funding) on the one hand, and implementation on the other. The plaintiffs assert that funding provides that bright line. As a result, they contend, documents generated after 2011 are discoverable because they were generated after funding was obtained. (Letter Brief, ECF No. 91 at 3.) More specifically, the plaintiffs assert that the rail crossing was evaluated as early as 2010, funding to implement the changes was received as early as 2011, and documents created after funding was obtained (such as the 2012 Diagnostic Traffic Study) are necessarily discoverable because they were not created within the scope of 28 U.S.C. § 130. The City disagreed, arguing that funding does not create a bright line, and that instead, reports, surveys, schedules, lists, and data can be generated on an ongoing basis, not as implementation but

as part of identifying, evaluating, and planning in aid of securing (or retaining) federal funding.

The City's view is the better one. Identifying, evaluating, or planning the safety enhancement of the railway crossing can be an iterative process; funding does not operate as a full stop to that process. *See Powers*, 177 F. Supp. 2d at 1279 (recognizing that section 409 can protect information compiled or collected after a project has been implemented if it is gathered for the purpose of revising the project, rather than for implementing the project).

Given this conclusion, the court agreed to the plaintiffs' request to conduct a document-by-document review to be sure that the withheld documents 1) really are reports, surveys, schedules, lists, and data and 2) are not part of implementation but were compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of the railway crossing pursuant to section 130. The court did that review on the record and captures its document-by-document orders on the attached privilege log. The first document on the log is work product.

There also is an issue regarding waiver. The plaintiffs contend that the City waived its privilege to the extent that it disclosed publicly certain reports and findings (generally either through public discussion, its website, or the bid process). (Letter Brief at 4.) The City did not dispute this point. As part of its document-by-document review, the court identified documents on the privilege log that already were disclosed publicly and ordered them disclosed here.

One issue is the collection of emails reflected in number 30 on the privilege log. As the court discussed with the parties, the emails collectively are not a single report; they do contain some reports and data that appear to be covered by the section 409 privilege. There also are other privilege issues that the court thinks were fairly raised by the City's request for an *in camera* review of documents for privilege. At the hearing, the court directed the City to review the emails, identify on a privilege log any emails withheld and the basis for withholding them, and produce emails that are not privileged.

**2. Depositions**

The parties do not dispute that that the plaintiffs cannot make an end run around section 409's privilege through depositions of the engineers. *See Bowman v. Norfolk Southern Ry. Co.*, 66 F.3d 315 (4th Cir. 1995). The plaintiffs wanted only to identify the scope of document discovery before

ORDER (No. 4:14-cv-05673-JSW (LB))

5

taking depositions. The plaintiffs verified that they would depose witnesses only about information gained independently of the compiling of any privileged materials. (*See* Letter Brief, ECF No. 91 at 4.) *See Powers v. CSX Transp., Inc.*, 177 F. Supp. 1276 (S.D. Ala. 2001); *see also Brown v. National Ry. Passenger Co.*, 221 F.3d 1338 (7th Cir. 2000) (testimony within the personal knowledge of the witness is permissible so long as it is not based on protected documents).

### 3. Union Pacific's Withheld Documents

Union Pacific brought its binder of withheld documents to the discovery hearing. After the court finished its review of the City's documents, it became apparent that Union Pacific's withheld documents are largely the same as the City's. The court directed Union Pacific to review its documents, eliminate any already covered by this ruling, disclose any documents that are not privileged, and resubmit only non-duplicative privileged documents. The court notes that discovery through the City based on waiver does not eliminate the protections that Section 409 might afford Union Pacific at trial. Any issues can be raised through motions in limine.

### 4. Deadlines

The court discussed the parties' deadlines with them, given the plaintiffs' pending motion to extend the deadlines. All parties share an interest in finishing discovery and then exploring mediation, possibly before any motions are filed. The City does not oppose the plaintiffs' motion; Union Pacific agrees that a continuance is appropriate but possibly for a shorter time. The court directed the parties to confer and to submit a joint request to the district judge by Monday, November 9, 2015. This will moot the motion pending before the district judge.

## CONCLUSION

This disposes of ECF No. 91.

**IT IS SO ORDERED.**

Dated: November 11, 2015

LAUREL BEELER
United States Magistrate Judge